# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| DEBRA K. HUBER, ) | |
|                 Plaintiff, ) | |
| v. ) | |
| ) | Case No. 07-2246 |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
|                 Defendant. ) | |

## REPORT AND RECOMMENDATION

In March 2007, Administrative Law Judge (hereinafter "ALJ") Barbara Welsch denied Plaintiff Debra Huber's applications for disability insurance benefits and supplemental security income benefits. The ALJ based her decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she is capable of performing a number of other jobs that exist in the national economy.

In January 2008, Plaintiff filed a Complaint for Judicial Review (#3) against Defendant Michael Astrue, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying benefits. In July 2008, Plaintiff filed a Motion for Summary Judgment or Remand (#14). She subsequently filed a Motion for the Court To Remand Her Case Pursuant to 42 U.S.C. § 405(g) – Sentence Six (6) (#16). In September 2008, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#19).

The Court previously recommended denying Plaintiff's Motion for the Court To Remand Her Case Pursuant to 42 U.S.C. § 405(g) – Sentence Six (6) (#16). After reviewing the administrative record and the parties' memoranda, this Court now recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Plaintiff's Motion for Summary Judgment or Remand **(#14)** be **GRANTED**.

## I. Background

### A. Procedural Background

Plaintiff applied for benefits in November 2005, alleging disability beginning March 2004 due to history of stroke and carpal tunnel syndrome, hypertension, diabetes, asthma, thyroid condition, and depression. She also testified that she could not work because of weakness and numbness and memory problems, and she is obese. (R. 20a.) The Social Security Administration denied the applications initially and upon reconsideration. Plaintiff appealed and ALJ Welsch held a hearing in January 2007, at which Plaintiff and a vocational expert testified. Gerard Breslin represented Plaintiff at the hearing. In March 2007, ALJ Welsch denied Plaintiff's applications for benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and she is capable of performing a number of jobs that exist in the national economy. The Appeals Council subsequently denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the final decision of the Commissioner. Plaintiff then appealed the decision to this Court.

### B. Plaintiff's Background

Plaintiff was 38 at the time at the time of the ALJ's decision. She is 67 inches tall and weighed between 226 and 250 pounds during the period under consideration. She completed ten years of school and later earned a GED and became a certified nurse's assistant ("CNA"). Plaintiff last worked in February 2005 as a CNA, but she has not engaged in substantial gainful activity since her alleged onset date of March 17, 2004. (R. 20a.)

### C. Medical Background

The parties adequately describe Plaintiff's medical background and the Court will not repeat it here.

### D. Testimony at the Hearing

Plaintiff testified that she lived in a house with a roommate. Her roommate brought her to the hearing. She receives food stamps and the township helps pay her rent. She has no medical insurance and goes to Aunt Martha's (Vermillion Area) Community Health Center, a free clinic. Between March and December 2005, Plaintiff received unemployment benefits. Plaintiff attended high school through the tenth grade and subsequently obtained a GED. She then earned a CNA certificate. Plaintiff last worked in February 2005 as a CNA in a nursing home. She was fired for not following proper procedures when caring for residents.

Plaintiff testified that she is unable to work because her right side is numb and weak all the time and her memory is not very good either. (R. 410.) She takes medication that sometimes help. She experiences difficulty sleeping when taking Zoloft. Plaintiff's doctor told her that if she got eight hours sleep at night, she was okay. Plaintiff testified that she "kind of" gets eight hours of sleep. (R. 412.) Every three months, Plaintiff sees a psychiatrist, Dr. Bumyong Lee, and a counselor, Brenda, at Crosspoint Human Services. Plaintiff does not drink or use street drugs.

During the day, Plaintiff gets up around ten, then she sits around. She tries to pick up after herself and she fixes meals for herself. She tries to do laundry, but her roommate does not like how she folds clothes. Plaintiff does dishes, but she sometimes breaks them. She vacuums and sweeps. She does not grocery shop because she has trouble walking. (R. 413.) She has not been to a grocery store, convenience store, or Walmart for two or three months. Plaintiff visits with friends or family about twice a month. She does not belong to any organizations or clubs. She goes to the township building twice a week to pay back her rent money.

Plaintiff has a driver's license, but cannot drive very far because she forgets where she is going. Plaintiff said she last drove the night before the hearing to a grocery store to get pop.

Plaintiff testified that she tries to do yard work and gardening. She cooks sometimes. She crochets for a hobby, but has not done any crocheting for about six months. She sometimes takes a walk. She has a dog that she feeds and takes care of, but she does not take him for walks. Plaintiff takes showers (she has trouble getting in and out of the tub), brushes her teeth, and combs her hair (but not very well).

Plaintiff smokes about one pack of cigarettes a day. Plaintiff's friend helps her pay for the cigarettes. She has not traveled for about two years. Plaintiff has a computer at home that she uses to play some games such as mystery games. She will stay on the computer for about an hour at a time. She sometimes receives emails from her relatives and tries to answer them. She does not read because she cannot concentrate well enough. She watches television quite a bit.

Plaintiff testified that she has had trouble remembering things since 2002. For example, on a daily basis, she cannot remember to shut off the stove, so things get burned. This happened just a week ago. Her roommate, Dianna, reminds her to take her medication. Dianna also takes care of Plaintiff's money.

Regarding her right arm, Plaintiff testified that she cannot hold things, open jars or bottles, zip her pants, or button her shirt. Regarding her right leg, it goes numb two to three times a day and stays that way for about ten minutes depending on whether Plaintiff is standing or sitting. Plaintiff can stand for about a half hour and walk about five blocks before she has problems. She has no trouble sitting. (R. 422.) Plaintiff sometimes experiences back pain and often has leg cramps. She sometimes has trouble bending over.

Plaintiff's attorney stated that Plaintiff's doctor, Dr. Lianne Holloway, had mentioned neuropsychological testing, but Plaintiff testified that it was too expensive. The ALJ pointed out that Plaintiff had passed a MMSE, a mini mental status test, with a score of 28 out of 30. (R. 424.)

James Lanier, a vocational expert (hereinafter "VE"), testified at trial. The ALJ asked Dr. Lanier to consider a hypothetical individual with a GED and CNA certificate, past relevant work the same as Plaintiff, who would be limited to light and sedentary work with no climbing, no working at unprotected heights or around unprotected hazardous machinery, and no prolonged walking. The ALJ also specifically noted that the hypothetical individual would be limited to routine, repetitive, unskilled, entry-level work. The VE testified that such an individual would be able to work as a ticket checker (sedentary), interviewer (sedentary), information clerk (sedentary or light), and office clerk (sedentary or light). The VE testified that his testimony was consistent with the *Dictionary of Occupational Titles* (hereinafter "DOT").

Plaintiff's attorney then asked the VE whether the following limitations would affect the available jobs: limited to sitting three hours out of an eight-hour day, limited to standing or walking for one hour, no pushing or pulling with the right arm, no fine manipulation with the left arm, and limited to lifting and carrying up to five pounds occasionally. The VE testified that such an individual would not be able to work as a CNA. The VE then stated that, if the individual was limited to sitting for only three hours in an eight-hour day, the individual would not be a mainstay in the work world.

The ALJ then questioned the VE again. The VE testified that the general office clerk would require frequent reaching, handling, and fingering, but no pushing and pulling. (R. 427.)

### E.  The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(i)(1). To determine disability, the Commissioner uses a five-step sequential evaluation. He determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability

to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy. Between steps three and four, the ALJ determines the claimant's residual functional capacity, that is, the work he is still able to perform despite limitations. 20 C.F.R. § 404.1545. The claimant bears the burden of production and persuasion at steps one through four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that the claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process. At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since the onset of disability. At the second step, the ALJ stated that the record showed severe impairments including a history of stroke in 1998, a history of carpal tunnel syndrome of the right hand, obesity, and depression. The ALJ also noted that she would consider other impairments including a thyroid condition, hypertension, diabetes, and asthma. (R. 20a.) At the third step, the ALJ determined that Plaintiff's impairments, even in combination, did not meet or medically equal any of the impairments listed in the Regulations. (R. 26.) The ALJ determined that Plaintiff had the RFC to perform sedentary to light work with no prolonged walking, no climbing, no work at unprotected heights, no work around unprotected hazardous machinery, and she is limited to work that is routine and repetitive in nature. (R. 26.) Based on this RFC, at step four, the ALJ determined that Plaintiff was not able to perform her past work as a CNA. However, at step five, the ALJ determined that Plaintiff was able to perform a significant number of jobs available in the national economy, including interviewer, information clerk, general office clerk, or ticket checker. (R. 27.) The ALJ also concluded that Plaintiff's statements regarding her limitations were not credible. (R. 26.) As a result of these findings, the ALJ found that Plaintiff was not disabled; therefore she was not eligible for social security benefits. (R. 27.)

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, the question before the Court is not whether a plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether a plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits. *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

The Court gives considerable deference to the ALJ's credibility findings and will not overturn them unless the plaintiff can show that those findings are patently wrong. *Urban v. Sullivan*, 799 F. Supp. 908, 911 (C.D. Ill. 1992). When credibility determinations rest on objective factors or fundamental implausibilities rather than subjective considerations, reviewing courts have more freedom to review them. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994).

## III. Analysis

Plaintiff argues that the Court should remand this case for the following reasons: (1) the ALJ's mental RFC is erroneous and unsupported; (2) the ALJ's physical RFC finding is erroneous and unsupported; (3) the ALJ mischaracterized Plaintiff's testimony, overstated her daily activities, and subsequently reached an erroneous credibility determination; and (4) the ALJ erred by failing to clarify the VE's testimony which posed potential occupations that exceeded the mental limitations set forth by the ALJ and the ALJ subsequently made an erroneous step five determination.

### A. Mental RFC

Plaintiff first argues that the ALJ erred when assessing Plaintiff's mental RFC because she did not consider the entire record.

The ALJ stated as follows:

> The only severe mental impairment established in the record is depression; however anxiety and an organic mental disorder have also been mentioned in the record and fully considered in combination with depression. The undersigned generally agrees with the State Agency physicians, at Exhibit 9F but finds a moderate limitation in the ability to concentrate, persist and attend; this gives the claimant the benefit of doubt regarding her mostly subjective memory and concentration problems. The claimant's treatment consists of counseling and medication review with Dr. Lee at Crosspoint since May 2005; the claimant testified that she sees a counselor and doctor every three months. The claimant has been taking Zoloft for the past several years (See Exhibit 24E). There is no record of significant mental health treatment prior to May 2005, and there is no record of hospital or emergency room visits at any point for mental health problems. In March 2006, Dr. Raju reported a score of 28 out of 30 on the Folstein Mini Mental State Test (See Exhibit 8F). Progress notes from Crosspoint also fail to establish disability. Progress notes from Dr. Lee show no cognitive deficits, cooperative behavior, and no homicidal or suicidal thoughts. The claimant has consistently been described as alert and oriented. She has also been consistently described as stable (See Exhibits 12F/16 and 15F). She has stated on more than one occasion that medications were helping her function. In June 2005, she stated that she had recently gone on a picnic and worked in the garden. She was planning two summer trips with her sister (See Exhibit 12F/23).
>
> Functional restrictions also fail to establish a disabling mental condition. The claimant has not demonstrated more than a mild limitation in daily activities and social functioning. As noted above, the claimant has not been noted to have deficits in self-care or daily living skills through her initial evaluation at Crosspoint in May 2005 (See Exhibit 12F), and there is no evidence of evictions, altercations, or severe social isolation. The claimant performs most of the usual daily activities, e.g. showering, brushing her teeth and hair, fixing light meals, washing dishes, drives an automobile, plays games on the computer, sends email, crochets occasionally, has a vegetable garden, etc. She has demonstrated at most moderate restrictions in the ability to concentrate, persist and attend. Her social worker reported some difficulties maintaining concentration in May 2006 (See Exhibit 12F/4). Staff at Vermilion Area Community Health Clinic have reported some memory and concentration difficulties (See Exhibit 16F/9), as has treating family physician Dr. Holloway. The undersigned finds that these subjective

> allegations are not supported by objective findings, given the results of the Folstein Mini Mental State Test by Dr. Raju in March 2006 (See Exhibit 8F) and the claimant's ability to discuss her daily activities and medical history without significant impairment during the hearing.  However, giving her the benefit of the doubt, she is limited to the performance of routine and repetitive tasks due to possible moderate problems with concentration, persistence and pace.  There is no evidence of episodes of decompensation, an inability to function outside a highly supported living arrangement or a marginal adjustment to her living environment.

(R. 24-25.)  Thus, the ALJ concluded that, as a result of her mental impairments, Plaintiff had mild limitations in daily activities and social functioning and moderate limitations in concentration, persistence, and pace.  As a result, the ALJ limited Plaintiff to routine, repetitive work.

Plaintiff objects to the fact that the ALJ based her conclusion primarily on the opinions of State Agency physicians.  There is nothing inherently improper about the ALJ's reliance on the opinions of State Agency physicians; the Seventh Circuit court has stated that "[i]t is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."  *Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004).  Plaintiff contends that the ALJ misstated the evidence when she stated that Plaintiff had not been diagnosed with any cognitive problems and downplayed the findings of Plaintiff's own physicians, thus reaching an erroneous mental RFC.  Plaintiff states that the evidence showed that Plaintiff had had a stroke that could cause her organic mental problems.  However, the ALJ noted that Plaintiff had worked for years after her stroke.  Plaintiff also contends that Plaintiff's March 2005 MRI (R. 386), which refers to cerebral atrophy, indicates that Plaintiff's condition had deteriorated because Plaintiff's 1998 MRI did not include the abnormalities indicated on the 2005 MRI.  The only record the Court was able to find that referred to a 1998 MRI stated only "[a]bnormal MRI of the brain.  Rule out Collagen Vascular Diseases." (R. 240.)  Plaintiff did not provide a page citation for the 1998 MRI and the Court was unable to find any other reference in the record to deterioration based on the MRI.  Based on the record, the Court finds Plaintiff's argument unpersuasive.

9

Plaintiff also contends that the ALJ contradicted herself when she asserted that the record and Plaintiff's conduct at the hearing showed "no cognitive deficits" but then acknowledged that Plaintiff's social worker and Dr. Holloway had noted concentration and memory problems. The ALJ explained that she did not give those opinions significant weight because "these subjective allegations are not supported by objective findings." (R. 26.) Plaintiff contends that the ALJ ignored the plausible explanation (for the lack of objective evidence) proffered by Dr. Holloway that Plaintiff could not afford neuropsychological testing. However, as Plaintiff acknowledged, the ALJ explained her reasoning as follows:

> [I]f [the mental health professionals at Crosspoint] thought there was such a need [for neuropsychological testing] there is no reason given why they would not have provided such testing. Her mental health provider apparently administered the MMSE which according to the clamant [(sic)] she passed, see Exhibit 16F/9. The claimant has demonstrated no need for further testing.

(R. 21-22.) The ALJ has the duty to weigh the evidence and resolve material conflicts. *See Richardson,* 402 U.S. at 399-400. Based on Plaintiff's argument, the Court cannot conclude that the ALJ erred.

Next, Plaintiff contends that the ALJ found that Plaintiff's depression was severe but she failed to discuss what impact her depression had on her ability to work. She objects to the ALJ's construction of the doctors' clinic notes stating that Plaintiff was stable and to the fact that the ALJ did not mention that Plaintiff had a GAF score of 50 in May 2005 (R. 331) and March 2006 (R. 295). More significantly, she contends that the ALJ has cherry-picked the evidence regarding the limitations resulting from her depression, failing to consider all the evidence in the record and ignoring internal inconsistencies in the reports from Dr. Tin Howard regarding Plaintiff's mental condition.

Dr. Tin Howard, a psychiatrist, completed the Psychiatric Review Technique (which rates functional limitations related to B criteria of the Listings) (R. 261-74) and the Mental RFC Assessment (R. 275-77). These two reports have some serious inconsistencies, even though they appear to have been completed on the same day (March 8, 2006). The PRT states that Plaintiff

**10**

has mild limitations in (1) activities of daily living, (2) difficulties in maintaining social functioning, and (3) difficulties in maintaining concentration, persistence, or pace. (R. 271.) The PRT narrative section stated that Plaintiff "has no difficulty maintaining social functioning and relates to others with no problems" and no difficulty maintaining concentration, persistence or pace. (R. 273.)

The Mental RFC Assessment provides more detail, noting that Plaintiff has moderate limitations in (1) the ability to interact appropriately with the general public, (2) the ability to accept instructions and respond appropriately to criticism from supervisors, (3) and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 276.) The narrative portion of the RFC Assessment states as follows: "There is evidence that the claimant cannot interact appropriately with the public or respond appropriately to criticism from supervisors, work with others, get along with workers and maintain socially appropriate behavior, so limit work tasks that do not require interaction with the general public." (R. 277.) The narrative also stated that Plaintiff has difficulty carrying out detailed instructions and maintaining attention and concentration for extended periods of time, however, she can perform simple tasks, carry out short and simple instructions, and sustain ordinary routine, and she has no "serious memory problems." (R. 277.)

Plaintiff contends that the ALJ failed to account for internal inconsistencies for these two functional categories and cherry-picked the evidence to support her conclusion. An ALJ need not provide a written evaluation of every piece of evidence or testimony. *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000). However, she may not simply pick out portions of a medical report that favor denial of benefits, while ignoring those favorable to disability. *Switzer v. Heckler,* 742 F.2d 382, 385-86 (7th Cir. 1984). Furthermore, the ALJ "must articulate at some minimal level [her] analysis of the evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

The ALJ stated that she generally agreed with Dr. Howard's PRT conclusion that Plaintiff had no (or mild) limitations in these areas. Regarding Plaintiff's problems with concentration, the ALJ stated that Plaintiff had "at most moderate restrictions in the ability to concentrate, persist and attend." (R. 25.) She stated that no doctor had observed or diagnosed Plaintiff with cognitive problems; at the same time, she stated that a social worker mentioned that Plaintiff "had some difficulty maintaining her train of thought, remembering and recalling" (R. 21) and had "some difficulties maintaining concentration in May 2006" (R. 25), and staff at Vermilon Area Community Health Clinic reported some memory and concentration difficulties, as did Plaintiff's treating physician, Dr. Holloway. The ALJ found that these statements were subjective and not supported by objective findings in light of the results of the Folstein Mini Mental State Test and the claimant's ability to discuss her daily activities and medical history without significant impairment during the hearing. Nevertheless, the ALJ gave Plaintiff the benefit of the doubt, limiting her to routine and repetitive work due to her alleged moderate problems with concentration, persistence, and pace. Thus, the ALJ explained her reasoning and then reached a conclusion that was consistent with Dr. Howard's narrative explanation of his findings in the Mental RFC Assessment, where he states that Plaintiff could carry out short and simple instructions, sustain ordinary routine, and perform simple tasks. Based on the evidence, the Court concludes that the ALJ did not err in assessing Plaintiff's limitations in this area.

As to Plaintiff's social functioning, the ALJ did not mention in her RFC or questions to the VE any limitations in this area. As noted above, the ALJ stated that she generally agreed with Dr. Howard's PRT conclusion that Plaintiff had no (or mild) limitations in this area. The ALJ's decision notes only that Plaintiff "reports good relationships with her siblings" and no evidence of evictions, altercations, or severe social isolation. (R. 25.) Thus, notwithstanding Dr. Howard's discussion in the Mental RFC Assessment narrative regarding Plaintiff's limited ability to interact with people, the ALJ concluded that Plaintiff demonstrated no more than a mild limitation in social functioning. (R. 25.)

The ALJ did not explain why she rejected Dr. Howard's Mental RFC Assessment which stated (in narrative) that Plaintiff should be not be required to interact with the general public and (in the check-off section) that Plaintiff had moderate limitations in this area. The ALJ relied on Dr. Howard's PRT report, which conflicted with other evidence in the record as well as being inconsistent with his Mental RFC Assessment. Furthermore, it is unclear why the ALJ relied on the PRT form–which relates to Step Three findings–rather than the Mental RFC Assessment, which expressly addresses RFC. The ALJ's lack of explanation means that the Court cannot perform a meaningful review of her decision regarding Plaintiff's limitations in social functioning. This is particularly significant because most of the VE's proposed jobs appear to require interaction with the general public. Accordingly, the Court recommends remanding this case for reconsideration so that the ALJ can explain her reasoning regarding Plaintiff's social functioning in light of the inconsistent opinions in Dr. Howard's reports.

### B. Physical RFC

Plaintiff next argues that the ALJ's physical RFC was flawed because it was not supported by the most recent RFC questionnaire completed by Plaintiff's treating physician. In addition, Plaintiff contends that the ALJ erroneously stated that the consultative examiners found no work-related restrictions.

Plaintiff first contends that the ALJ should have giving controlling weight to the opinions of Plaintiff's treating doctor, Dr. Holloway. Dr. Holloway opined that Plaintiff was incapable of finding and keeping any type of employment because she would have to miss more than four days of work a month as a result of her impairments. She also opined that Plaintiff could not sit longer than three hours, stand and walk longer than one hour, do fine manipulations, use her feet for repetitive movements, lift more than five pounds, climb, or balance. (R. 23, citing Exhibit 16F/2-5.)

The Regulations provide that the findings of a treating doctor as to the severity of an impairment should be accorded controlling weight if well supported by the evidence and not

inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). If the ALJ decides that the opinion is not entitled to controlling weight, she must reasonably articulate her reasons for doing so. *Clifford*, 227 F.3d at 871.

Regarding Dr. Holloway's opinions, the ALJ stated as follows:

> Her treating doctor's conclusions at Exhibit 16F regarding what work activities the claimant can or can not perform are not given controlling weight as they are not supported by medical findings; e.g. he sates [(sic)] that the claimant can not perform fine manipulations with either hand which is contrary to contemporaneous findings that during examination at Exhibit 8F she had no restriction in fine and gross manipulations with either hand. The claimant' [(sic)] treating family doctor (Exhibit 16F) apparently accepts all the claimant's subjective statements despite a lack of medical findings to support the claimant's allegations regarding her degree of symptoms; this doctor's statements regarding the claimant's functional capacity do not meet the requirements at 20 CFR 404.1527 and 416.927 or SSR 96-5/P and are considered but not given controlling weight.

(R. 21.)

The ALJ explained her reasoning for failing to give Dr. Holloway's opinion controlling weight, stating that Dr. Holloway's findings are not supported by medical findings and "appear to be sympathetic repetitions of what the claimant tells him [(sic)] without medical findings to support any limitations." (R. 23.) She also stated that her findings were contrary to contemporaneous findings by Dr. Raju, a State Agency doctor who examined Plaintiff, and stated that State Agency doctors reached a contrary conclusion, finding that Plaintiff could perform a full range of medium work. As noted above, an ALJ may properly rely on the opinions of State Agency physicians. *See Flener*, 361 F.3d at 448. Based on this explanation, the Court cannot conclude that the ALJ erred by failing to give controlling weight to Dr. Holloway's opinions.

Plaintiff next argues that the ALJ erroneously stated that the consultative examiners found no work-related restrictions. Plaintiff contends that the consultative examiners did not

**14**

find work-related limitations because they were never asked for any.  Plaintiff also cites *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir. 1977) for the proposition that physician reports that are not based on personal examination of the claimant deserve little weight in the overall evaluation of disability.

This argument is unpersuasive.  The ALJ notes that Dr. Raju completed consultative examinations in August 2004 and March 2006.  (R. 248-51, 256-60.)  Both reports were based on his personal examination of Plaintiff, rather than his review of the record.  Furthermore, in both reports, Dr. Raju expressly stated that he noted no restrictions in work-related activities such as sitting, standing, walking, hearing, or speaking. (R. 251, 259.)  In August 2004, he opined that Plaintiff had no focal motor deficits, her right arm and leg strength was 5/5, her gait was normal, she was able to walk without a cane or walker, and her fine and gross manipulation was intact in both hands.  He acknowledged that Plaintiff had a history of right side weakness, but stated that he had not observed that during the exam and her strength was normal on the right side.  (R. 251.)  Similarly, in March 2006, he stated that he had observed no slurred speech or right leg weakness during his examination, Plaintiff's gait was normal, she walked without an assistive device, motor strength was 5/5 in her arms and legs on both sides, she was able to do heel and toe walk on both sides without difficulty, and she had no restrictions in fine and gross manipulation using either hand.  (R. 259.)  Accordingly, the Court concludes that the ALJ did not err when assessing Plaintiff's physical RFC and this does not constitute a basis for remand.

### C.  Credibility

Plaintiff next argues that the ALJ mischaracterized Plaintiff's testimony, overstated her daily activities, and subsequently reached an erroneous credibility determination.  Specifically, Plaintiff contends that the ALJ played doctor and improperly characterized Plaintiff's activities

15

when she referred to a lack of emergency room visits, smoking, lack of usual signs of pain, socialization with her family, planning a trip, going on a picnic, and improvement of mental condition with medication. Plaintiff also contends that the ALJ exaggerated Plaintiff's activities of daily living and has placed too much weight on her activities. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (stating that courts should use care in "placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home").

The Court agrees that the ability to perform some household activities does not necessarily indicate an ability to perform substantial gainful activity. *Id.* Nevertheless, while courts have questioned whether doing housework really evidences that a claimant is able to work outside the home, the ALJ is allowed to consider whether the claimant's daily activities are inconsistent with his stated inability to work; in fact, she is required to do so. *See* 20 C.F.R. § 416.1529(c)(3); SSR 96-7p. Furthermore, an ALJ is "not obliged to believe all [of a claimant's] testimony. Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

In a recent decision, the Seventh Circuit stated that, in reviewing a credibility determination, a court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (citing *Jens v. Barnhart*, 347 F.3d 209, 213-14 (7th Cir. 2001)). "[O]nly when the ALJ's determination lacks any explanation or support . . . [will we] declare it to be patently wrong." *Id.* at 413-14.

Here, the ALJ discussed Plaintiff's daily activities as one facet of her credibility determination. In addition, the ALJ noted that Plaintiff testified that her medications help to

**16**

some degree, and that Plaintiff had been looking for work during the period from July to December 2005. (Plaintiff's alleged onset date is March 17, 2004.) The ALJ also noted that Plaintiff had complained of difficulty walking but Dr. Raju's August 2004 and March 2006 reports reported that the strength in her legs was 5/5 and she had no problems walking and Plaintiff's family doctor had not noted any objective weakness or other medical findings that supported Plaintiff's statements that she is weak and has problems walking. Thus, the ALJ provided an explanation for her credibility determination and the Court cannot conclude that her determination was patently wrong.

### D.  VE Testimony

Plaintiff next argues that the ALJ erred by failing to clarify the VE's testimony which posed potential occupations that exceeded the mental limitations set forth by the ALJ and the ALJ subsequently made an erroneous step five determination. Specifically, Plaintiff contends that the ALJ failed to incorporate all of Plaintiff's mental limitations, including the following: (1) Plaintiff suffers from major depressive disorder and memory loss and cannot handle her own funds or pay her bills; (2) Plaintiff's brain atrophy and continuing stroke activity causes right-side weakness and limitations in concentration, persistence, and pace; and (3) Plaintiff has anger issues and episodes that cause difficulties in social interaction. Plaintiff also contends that the jobs the VE listed conflict with the DOT because only the ticket checker job is unskilled work, while the other three jobs have a SVP of 3 or higher, indicating semi-skilled to skilled work.

Because the Court has recommended that this case be remanded so that the ALJ can consider Dr. Howard's opinion that Plaintiff should be limited to work that does not require interaction with the general public, the Court need not address these arguments.

### IV.  Summary

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment or Remand **(#14)** be **GRANTED**. The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten working days after

service of a copy of this recommendation.  *See* 28 U.S.C. 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 11th day of February, 2009.

s/ DAVID G. BERNTHAL<br>U.S. MAGISTRATE JUDGE